UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN LANCASTER,

      Plaintiff,                                  Case No.
v.                                              Hon:

COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC d/b/a COMCAST,

      Defendants.

_____/

PITT, MCGEHEE, PALMER & RIVERS, P.C.
ROBERT PALMER (P31704)
Beth M. Rivers (P33614)
Attorney for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan  48067
(248) 398-9800
rpalmer@pittlawpc.com
brivers@pittlawpc.com

_____/

**COMPLAINT AND JURY DEMAND**

NOW COMES the Plaintiff, Jonathan Lancaster, by and through his attorneys, Pitt, McGehee, Palmer & Rivers, P.C., and in support of his Complaint against Defendant states as follows:

## JURISDICTIONAL ALLEGATIONS

1. This action is for monetary damages and arises under Title VII of the Civil Right Act of 1964, as amended and 42 USC § 1983. A copy of Plaintiff's Right to Sue letter was issued by the Equal Employment Opportunity Commission on September 27, 2016.

2. Defendant, Comcast Communications Management, LLC d/b/a Comcast at all times material hereto was an employer under Title VII and also under the Elliott Larsen Civil Rights Act, MCLA § 37.2101 et seq. (hereinafter referred to at the ELCRA).

3. This Court has federal question jurisdiction under 28 USC § 1331(b) and 28 USC § 1343.

4. This Court has supplemental jurisdiction pursuant to 28 USC §1367(a) over the state law claims arising out of the Michigan common law and the Elliott Larsen Civil Rights Action MCLA § 37.2101 et seq. that arise out of a common nucleus of operative facts.

5. The matter in controversy exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs.

6. Venue is proper in this Court under 28 USC § 1391(b) because all of the acts or omissions complained of herein occurred in this District and the Plaintiff and Defendant reside in or are established in this district.

## **THE PARTIES**

7. Plaintiff, Jonathan Lancaster, at all times material hereto was a resident of the City of Warren, County of Macomb, State of Michigan and at all times material hereto was employed by Defendant Comcast.

8. Defendant, Comcast Cable Communications Management, LLC d/b/a Comcast (hereinafter "Comcast") at all times material hereto owned and operated a business commonly known as "Comcast" which provided cable TV services, high speed internet, phone service and home automation and security to customers throughout the country, including the State of Michigan and the Detroit Metropolitan area. Upon information and belief, Comcast Cable Communications Management, LLC was licensed by and allowed to exist under the laws of the State of Michigan relative to the aforementioned purpose.

9. At all times material hereto, Richard Koger, an African American, was employed by Defendant Comcast as the Senior Director of Information Technology.

10. At all times material hereto, although not named as a Defendant Adrienne Greaves, an African American, was employed as a Human Resources representative for the IT group by the Defendant Comcast.

11. At all times material hereto, although not named as a Defendant Christy Young, a white woman, was employed as a Senior Manager in Human Resources/Employee Engagement by the Defendant Comcast and was involved in the employment decisions described herein that adversely affected the Plaintiff.

12. At all times material hereto, although not named as a Defendant Ryan Craig, a white man, was employed by the Defendant Comcast as Vice President of Information Technology and at all times material hereto was the direct supervisor of Richard Koger and Jonathan Lancaster and was intimately involved in the decision to terminate both Mr. Koger and Mr. Lancaster.

13. Plaintiff brings this action for damages arising out of the fact that Defendant Comcast by and through its employees created and allowed a hostile work environment to exist and terminated the Plaintiff on the basis of his race and on the basis of his complaints of a hostile work environment.

## COMMON ALLEGATIONS

14. Plaintiff incorporates by references Paragraphs 1 through 13 as if fully stated herein.

15. Plaintiff, Jonathan Lancaster, began his employment with Defendant Comcast on June 9, 2003 as a Communication Technician in the Company Installation and Service Department.

16. In October 2008 Plaintiff was promoted to Supervisor Installation and Maintenance. In that capacity Mr. Lancaster supervised a significant number of employees without incident or complaint by anyone under his authority.

17. From November 10, 2013 through April 29, 2015 Plaintiff Jonathan Lancaster was employed by Defendant Comcast as an Information Technology Manager (IT) within Defendant Comcast's IT department

18. As an IT Manager, Plaintiff supervised a number of employees in the IT Department throughout Comcast's Heartland Region which included Michigan, Indiana and Kentucky.

19. At all times material hereto, Plaintiff reported to Senior Director of Information Technology Richard Koger.

20. At all times material hereto Christopher Farr was employed by the Defendant Comcast and reported directly to Plaintiff Jonathan Lancaster, as his manager in the IT Department.

21. Plaintiff Jonathan Lancaster is African American.

22. At all times material hereto Defendant Comcast fostered a racially hostile work environment in which supervisors and workers routinely made disparaging racist comments with no consequences.

23. The existence of the hostile work environment is evidenced by the following:

    a. In November of 2011, Plaintiff Jonathan Lancaster reported to a white manager Don Henderson. Mr. Hendeson used the term "urbanites" to describe African American workers and further sent out an e-mail showing African American men with low, saggy hanging pants, hats with brims pointed to the back and hoodies to all individuals he supervised, including the Plaintiff Jonathan Lancaster. No remedial action was taken against Mr. Henderson for his actions and further he was allowed to sit on interview panels for promotions including promotional positions for which the Plaintiff applied.

    b. In 2013 a white supervisor by the name of Casimer Hensel, stated to the Plaintiff "that he was going to do (Plaintiff) like my boy Trayvon Martin". On a separate occasion Hensel told the Plaintiff in a management meeting that he should have "his homeboys come and barbeque for him". On numerous occasions Mr. Hensel used the "N" word in front of the Plaintiff. During this time period Mr. Hensel also showed the Palintiff a text message he had received on his company-issued Blackberry indicating that it was a good day for "white out" being that it was black history month. Plaintiff complained of these actions to Human Resources' representative.

24. In response to all of the events described above, the Plaintiff voiced his objection and complaints regarding those situations through proper channels to the appropriate HR personnel.

25. Although Plaintiff was interview by HR Manager Kim Vernon with respect to these complaints, upon information and belief, no remedial action was taken relative to Casimer Hensel or Don Henderson.

26. In March of 2015, after almost 2 years supervising his IT team, Plaintiff was advised that one of the technicians he supervised had allegedly filed allegations that Plaintiff and Chris Farr, a white assistant supervisor had been unfair in the employee's annual review.

27. As a result of the Complaint, Christy Young a white Senior Human Resources Manager interviewed the employee who complained and actively attempted to solicit other complaints regarding the Plaintiff's management style in an effort to build a case against the Plaintiff.

28. As a further result of the initial complaint, Christy Young attempted to interview the Plaintiff's entire team and in so doing attempted to solicit complaints regarding the Plaintiff's management style.

29. After building her case against the Plaintiff, Ms. Young discussed her alleged findings with Adrienne Greaves and Ryan Craig.

30. The three individuals then met with the Plaintiff and accused him of misconduct and of creating a hostile working environment and placed him on an administrative leave.

31. Plaintiff attempted to truthfully answer all questions put to him and provide information relative to the allegations that he had "created a hostile work environment."

32. There was no legal or factual merit to the allegations that were made against the Plaintiff.

33. Upon being placed on administrative leave, Plaintiff filed an internal complaint through the appropriate channels on April 10, 2015 alleging that he was being targeted because he was an African American.

34. After making said complaint, Plaintiff received a phone call from HR representative Christy Young indicating that she had investigated his complaint, her investigation was done and she had referred the matter to Human Resources.

35. On April 29, 2015, Plaintiff was called by Adrienne Greaves and Ryan Clark and was told that he was being terminated because he had created a hostile work environment and was not trusted by his employees.

36. Plaintiff Jonathan Lancaster was terminated on or about April 29, 2015.

37. Plaintiff's termination was made by Christy Young and Ryan Craig and was approved by upper management.

38. On April 29, 2015, the director of the department, Richard Koger, a long time employee and Plaintiff's direct supervisor who is African American was also terminated by the same individuals.

39. Upon information and belief, subsequent to the termination of Mr. Koger and Mr. Lancaster, both of their positions were reassigned to white employees.

40. That upon information and belief, at the time of their termination Mr. Lancaster and Mr. Koger were the only African American management employees within the IT department of Comcast.

41. Upon information and belief, throughout Comcast there are limited numbers of African Americans in management.

42. Defendant Comcast has a policy of excluding and eliminating African Americans from management.

43. In conducting its investigation into the alleged complaints of "creating a hostile work environment" by the Plaintiff, Defendant Comcast, its agents and employees ignored and discounted every statement made by the Plaintiff, made no attempt to remediate the relationship between the Plaintiff and his team and used minor complaints and unsupported accusations to justify and remove the Plaintiff from his employment as a direct result of this race and/or the fact that he had repeatedly complained of Comcast's policy of

allowing a hostile work environment to exist and had further complained that he was targeted because of his race.

44.     As a direct and proximate result of Defendant's actions in depriving the Plaintiff of his rights in violation of Title VII and the ELCRA, Plaintiff has been placed in financial distress, suffered and will continue to suffer, loss of salary, benefits, and impairment of his earning capacity.

45.     As a further direct and proximate result of Defendant's deprivation of Plaintiff's rights in violation of Title VII and the ELCRA, Plaintiff has suffered and will continue to suffer emotional and physical distress, mental and physical anguish, loss of reputation, loss of standing in the community, humiliation and embarrassment and the physical effects associated therewith and will so suffer in the future.

## COUNT I
## (Violation of Title VII)

46.     Plaintiff incorporates by reference Paragraphs 1 through 45 as if fully stated herein.

47.     At all times material hereto Plaintiff was an employee of Defendant Comcast who was an employer within the definition of Title VII.

48.     At all times material hereto Defendant Comcast and its upper management employees were under a duty not to discriminate against the

Plaintiff as a result of his race or as a result of the Plaintiff having complained of a hostile work environment and/or racial targeting.

49. In direct disregard of this duty and obligation, Defendants by and through the acts of its employees, committed the following acts which directly and proximately deprived the Plaintiff of his civil rights under Title VII. These acts include:

   a. Conducting an investigation into the Plaintiff allegedly for creating a hostile work environment based upon minor and unsubstantiated allegations made by employees within his circle of supervision;

   b. Soliciting employees within the Plaintiff's circle of supervision in an effort to build and create a case against the Plaintiff to allegedly justify his wrongful termination;

   c. Failing to afford the Plaintiff accurate notice of the accusations made against him when conducting said investigation;

   d. Failing to provide the Plaintiff with a reasonable opportunity to respond to the solicited accusations and observations obtained by Defendants from the employees within the Plaintiff's circle of supervision;

   e. Terminating the Plaintiff from his employment as a result of a sham investigation;

   f. Terminating the Plaintiff from his employment without any legal or factual basis to support the accusation that the Plaintiff had "created a hostile work environment";

   g. Terminating the Plaintiff for "creating a hostile work environment" when other similarly situated Caucasian managers did in fact create hostile work environments of a much more severe and significant nature than the

11

      environment maintained by the Plaintiff within his circle of supervision and were not disciplined as a result;

  h.    Failing to offer any type of training, remediation, or any other response less than a termination relative to the alleged complaints made by the employees within the Plaintiff's circle of supervision;

  i.    Other adverse actions to be determined.

50.    All of the above acts were taken against the Plaintiff as a direct and proximate result of the fact that the Plaintiff was African American and/or the fact that the Plaintiff had repeatedly complained about the fact that Defendant allowed other supervisors to create and maintain a hostile work environment on the basis of race and/or on the basis that Plaintiff had complained that he was targeted because of his race.

51.    As a direct and proximate result of the wrongful actions complained of herein, Plaintiff suffered all of the injuries and damages set forth above.

52.    The actions of the Defendant by and through its employees were willful and taken with the intent to deprive the Plaintiff of his civil rights as guaranteed and protected to him under Title VII.

53.    As a result of the clear and intentional violation of Plaintiff's civil rights, in addition to compensatory damages, Plaintiff seeks an award of

actual attorney fees and costs, as well as an award of exemplary/punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment in his favor awarding the Plaintiff the following relief:

a. Compensatory damages in an amount which will compensate the Plaintiff for his lost income, including wages and benefits, both past and future to which he is found to be entitled;

b. Compensatory damages for the non-economic losses experienced by the Plaintiff;

c. Reasonable actual attorney fees, costs and interest wrongfully incurred in obtaining this judgment;

d. Exemplary and/or punitive damages due to the intentional nature of Defendants' misconduct; and

e. Any other relief this Court deems equitable or just.

## COUNT II
## (Violation of Elliott-Larsen Civil Rights Act "ELCRA")

54. Plaintiff incorporates by reference Paragraphs 1 through 54 as if fully stated herein.

55. At all times material hereto Plaintiff was an employee of Defendant Comcast and Defendant Comcast was an employer within the definition of ELCRA.

56. At all times material hereto Defendant Comcast and its upper management employees were under a duty not to discriminate the Plaintiff as a result of his race or as a result of the Plaintiff having complained of a hostile work environment and/or racial targeting.

57. In direct disregard of this duty and obligation, Defendant by and through the acts of its employees, committed the following acts which directly and proximately deprived the Plaintiff of his civil rights under ELCRA. These acts include:

      a. Conducting an investigation into the Plaintiff allegedly for creating a hostile work environment based upon minor and unsubstantiated allegations made by employees within his circle of supervision;

      b. Soliciting employees within the Plaintiff's circle of supervision in an effort to build and create a case against the Plaintiff to allegedly justify his wrongful termination;

      c. Failing to afford the Plaintiff accurate notice of the accusations made against him when conducting said investigation;

      d. Failing to provide the Plaintiff with a reasonable opportunity to respond to the solicited accusations and observations obtained by Defendants from the employees within the Plaintiff's circle of supervision;

      e. Terminating the Plaintiff from his employment as a result of a sham investigation;

      f. Terminating the Plaintiff from his employment without any legal or factual basis to support the accusation that the Plaintiff had "created a hostile work environment";

    g.    Terminating the Plaintiff for "creating a hostile work environment" when other similarly situated Caucasian managers did in fact create hostile work environments of a much more severe and significant nature than the environment maintained by the Plaintiff within his circle of supervision and were not disciplined as a result;

    h.    Failing to offer any type of training, remediation, or any other response less than a termination relative to the alleged complaints made by the employees within the Plaintiff's circle of supervision; and

    i.    Other adverse actions to be determined.

58. All of the above acts were taken against the Plaintiff as a direct and proximate result of the fact that the Plaintiff was African American and/or the fact that the Plaintiff had repeatedly complained about the fact that Defendant allowed other supervisors to create and maintain a hostile work environment on the basis of race and/or on the basis that Plaintiff had complained that he was targeted because of his race.

59. As a direct and proximate result of the wrongful actions complained of herein, Plaintiff suffered all of the injuries and damages set forth earlier in the body of this Complaint.

60. The actions of the Defendant by and through its employees were willful and taken with the intent to deprive the Plaintiff of his civil rights as guaranteed and protected to him under ELCRA.

61.     As a result of the clear and intentional violation of Plaintiff's civil rights, in addition to compensatory damages, Plaintiff seeks an award of actual attorney fees and costs, as well as an award of exemplary damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment in his favor awarding the Plaintiff the following relief:

   a. Compensatory damages in an amount which will compensate the Plaintiff for his lost income, including wages and benefits, both past and future to which he is found to be entitled;

   b. Compensatory damages for the non-economic losses experienced by the Plaintiff;

   c. Reasonable actual attorney fees, costs and interest wrongfully occurred in obtaining this judgment;

   d. Exemplary damages due to the intentional nature of Defendants' misconduct;

     e.    Any other relief this Court deems equitable or just.

                  PITT, McGEHEE, PALMER & RIVERS, P.C.

            By:   /s/Robert Palmer
                  Robert Palmer (P31704)
                  Beth M. Rivers (P33614)
                  Attorney for Plaintiff
                  117 W. Fourth Street, Ste. 200
                  Royal Oak, MI 48067
                  (248) 398-9800
                  rpalmer@pittlawpc.com
                  brivers@pittlawpc.com

DATE:     December 22, 2016

## JURY DEMAND

Plaintiff herein demands a trial by jury of all issues to the within cause of action.

                  PITT, McGEHEE, PALMER & RIVERS, P.C.

            By:   s/Robert Palmer
                  Robert Palmer (P31704)
                  Beth M. Rivers (P33614)
                  Attorney for Plaintiff
                  117 W. Fourth Street, Ste. 200
                  Royal Oak, MI 48067
                  (248) 398-9800
                  rpalmer@pittlawpc.com
                  brivers@pittlawpc.com

DATE:     December 22, 2016